***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Glenn, with minor modifications.
 ***********
The Full Commission finds as additional fact and concludes as additional matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On the date of alleged injury, all parties were properly before the Commission and the Commission had jurisdiction of the parties and the subject matter herein. All parties are correctly designated and there is no question as to mis-joinder or non-joinder of parties. All parties involved are bound by and subject to the North Carolina Workers' Compensation Act.
2. The parties stipulate that an employment relationship existed between the plaintiff and the defendant-employer on the date of the alleged injury.
3. AMCOMP was the Carrier on the risk at the time of the alleged injuries by accident.
4. The dates of the alleged injuries are April 17, 2003, and April 21, 2003.
5. The parties agree that the average weekly wage is $494.85, and the compensation rate is $329.90.
6. The issues to be determined by the Commission are as follows:
 a) Whether the plaintiff sustained injuries by accident while in the course and scope of his employment with the defendant-employer; and
 b) If so, what, if any, benefits is the plaintiff entitled to receive under the North Carolina Workers Compensation Act.
 ***********
Based upon all the competent evidence of record, the undersigned makes the following additional:
 FINDINGS OF FACTS
1. On April 17, 2003, the plaintiff was employed by the defendant-employer as a "CNC Lead Man," a job that required him to lift, carry, push, pull, and manipulate full sheets of plywood. On that date, the plaintiff was lifting and pulling 75 to 80 pound sheets of plywood and felt a "hotness" in his back. The plaintiff continued working, thinking it would pass.
2. The plaintiff's condition did not improve and he went to Dr. Ted Cash for treatment that same day. Dr. Cash noted in the plaintiff's history that: "He has been having to do more physical activity at work." Dr. Cash diagnosed the plaintiff with back and leg pain with pain between the shoulder blades. The plaintiff was prescribed Vicodin, Parafon Forte, and Zanaflex. He continued treatment with Dr. Cash through the date of hearing before the Deputy Commissioner.
3. The plaintiff was out of work for a holiday and returned to work on April 21, 2003. He was still experiencing discomfort in his back. The plaintiff continued to lift and pull plywood. While pulling himself up on the router table, he felt a "pop" and an "explosion of hotness" in his back. At that time, the plaintiff told plant manager Cindie Carpenter that he had hurt himself "back there." The plaintiff then left to get medical attention.
4. Following his injury on April 21, 2003, the plaintiff treated at Cleveland Regional Medical Center that same day. He was written out of work for four days.
5. The plaintiff returned to Dr. Cash on April 24, 2003, with complaints of pain from back to chest, going under his right arm. Dr. Cash's records state that the plaintiff hurt his back at work on April 21, 2003.
6. On April 29, 2003, the plaintiff returned to Dr. Cash with complaints of right shoulder pain and swelling in his right breast. Dr. Cash referred him to Dr. Patrick Hayes with the Miller Orthopedic Clinic. Dr. Hayes saw the plaintiff that same day.
7. Dr. Hayes diagnoses were: (1) status post gunshot wound as a child to the left pelvic area; (2) left lower leg longstanding subjective numbness and tingling and radicular pain with low back pain; and (3) right quarter pain around the scapula, axillary and anterior chest with no clear shoulder pathology. Dr. Hayes gave the plaintiff a work excuse with work restrictions of no lifting over ten pounds, no pushing or pulling greater than ten pounds, and no overhead work. Additionally, plaintiff was restricted to sitting work only. An EMG was recommended.
8. On May 23, 2003, the plaintiff returned to Dr. Hayes after a CT lumbar myelogram was completed. The result showed possible nerve root compromise at any level due to fibrosis or metal fragments. The plaintiff stated he had bilateral leg numbness and tingling but it "has recently gotten worse." Dr Hayes revised the work restrictions. Dr. Hayes ultimately concluded that the plaintiff's condition could not be improved with surgery, and noted: "His condition, in my mind, is chronic pain." Dr. Hayes was of the opinion that the plaintiff possibly exacerbated his underlying, prior gun shot wounds by suffering a sprain/strain at work. Dr. Hayes was further of the opinion that because the plaintiff had a preexisting condition, it would be more likely for him to suffer a sprain/strain and stated: "I believe he strained his back at work."
9. Dr Hayes referred the plaintiff to Dr. Jerry Perry of Carolina Neurosurgery Spine Associates, who saw the plaintiff on June 10, 2003. After requesting additional tests, Dr. Perry did not find an operable lesion. He recommended conservative therapy and the possibility of pain management. Dr. Perry had no further treatment to offer the plaintiff.
10. On June 24, 2003, the plaintiff saw Dr. Brian Wilder of Southeast Pain Care. He was seen by Dr. Wilder on several later occasions and received epidural and trigger point injections. The plaintiff continued under Dr. Wilder's care until November 14, 2003, and was given a diagnosis of back pain, multifactorial, including myofascial.
11. Dr. Cash has been the plaintiff's primary care physician since before April 17, 2003, and has continued to provide care to the plaintiff. Dr. Cash has continuously written the plaintiff out of work since April 21, 2003. Dr. Cash relates plaintiff's continuing problems to his injuries at work.
12. The defendants have argued before the Full Commission that their due process rights were violated when, at the hearing before the Deputy Commissioner, the Deputy Commissioner limited the defendants' presentation of lay evidence. Upon a careful review of the record in this matter, including the hearing transcript of the proceedings before the Deputy Commissioner, the Full Commission finds that the Deputy Commissioner neither abused his judicial authority nor violated the defendants' due process rights by limiting defendants' presentation of lay evidence. Given the limited time restraints in which hearings must be held, the Full Commission finds that the Deputy Commissioner's actions were taken in the interest of judicial economy. However, while it would not have affected the ultimate outcome of the case, the better practice would have been to allow the lay witnesses to testify in full.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The plaintiff sustained injuries by accident arising out of and in the course of his employment with defendant-employer on April 17, 2003 and April 21, 2003. N.C. Gen. Stat. § 97-2(6).
2. The plaintiff is entitled to temporary total disability compensation at the weekly rate of $329.90 from April 21, 2003, and continuing until further order of the Industrial Commission.
3. The plaintiff is entitled to have the defendants provide medical compensation arising from his injuries by accident that is reasonably necessary to effect a cure, give relief, or lessen his period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. The defendants' due process rights, pursuant to Section I of theFourteenth Amendment of the United States Constitution and Section Eighteen of Article I of the North Carolina Constitution, were not violated when the Deputy Commissioner limited the defendants' presentation of lay evidence in the interest of judicial economy.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. The defendants shall pay to the plaintiff temporary total disability compensation at the weekly rate of $329.90 per week from April 21, 2003, and continuing until further order of the Commission, subject to the attorney's fee provided herein. The portion of this award that has accrued shall be paid to the plaintiff in a lump sum.
2. The defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injuries when bills for the same have been submitted to and approved by the Industrial Commission, for so long as such evaluations, treatments, and examinations may reasonably be required to effect a cure, give relief, or lessen plaintiff's period of disability.
3. The defendants shall pay to the plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to the plaintiff herein. Fees that are based upon the portion of the plaintiff's award that has accrued shall be paid to the plaintiff's counsel in a lump sum; thereafter, the defendants shall pay to the plaintiff's counsel every fourth compensation check that is due the plaintiff.
4. The defendants shall pay the costs of this action.
This 3rd day of October 2005.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/____________ BUCK LATTIMORE CHAIRMAN